```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

ELIZABETH KUNKLE

      *Plaintiff*,

   v.

REPUBLIC BANK and        No. 1:21-cv-20245(NLH-MJS)
WILLIAM POUNDS            OPINION

      *Defendants*.

APPEARANCES:

Sebastian Ionno
D. Rebecca Higbee
Aiello Harris Marth Tunnero & Schiffman, PC
140 S. Broadway, Suite 5
Pitman, NJ 08071

   *Attorneys for Plaintiff*

William J. Leahy
Bridget Devlin
Littler Mendelson
Three Parkway
1601 Cherry Street
Suite 1400
Philadelphia, PA 19102

   *Attorneys for Defendants*

**HILLMAN, District Judge**

The instant matter involves a former employee of Republic Bank who asserts claims against the bank and her former supervisor under the New Jersey Law Against Discrimination ("NJLAD" or "LAD") on the basis of gender. Currently pending

before the court is Defendants' Motion for Summary Judgment (ECF No. 17). For the reasons that follow, Defendants' Motion shall be granted.

## BACKGROUND

The undisputed facts[1] of this matter as they specifically pertain to whether Plaintiff's NJLAD claims are properly before this Court are as follows.[2] Defendant Republic Bank is a state chartered financial institution organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania. (SUF ¶ 1, n.1; ECF No. 1, ¶ 7.) Plaintiff, a citizen and resident of New Jersey, began working at Defendant Republic Bank in 2005[3] as an administrative assistant in the Commercial Real Estate Department. (SUF ¶ 1;

---

[1] For purposes of the instant discussion, this Court shall refer to Defendants' Statement of Undisputed Facts as "SUF," Plaintiff's Response as "RSUF," Plaintiff's Statement of Undisputed Facts as "Pl.'s SUF" and Defendants' Response thereto as "Defs.' RSUF."

[2] Plaintiff submits a Certification in support of her Opposition to the instant Motion. (ECF No 21-32.) To the extent any portion of Plaintiff's Certification contradicts her deposition testimony or other evidence of record, it shall be disregarded by the court. Hashem v. Hunterdon Cent. Reg'l High Sch. Bd. of Educ., Civil Action No. 15-8585, 2019 U.S. Dist. LEXIS 72483, at *20 (D.N.J. April 30, 2019) ("Plaintiff cannot, now, alter her own deposition testimony through the submission of a certification in opposition to summary judgment.").

[3] Plaintiff's Statement of Undisputed Facts provides 2015 as the year she began employment with Defendant Bank. This appears to be a typographical error, as she admits to Defendants' Statement of Undisputed Facts that the year was 2005.

RSUF ¶¶ 1, 4; Pl.'s SUF ¶ 2; Defs.' RSUF ¶ 2.)  In March 2007,[4] Plaintiff was promoted to the position of Portfolio Manager and began reporting to Defendant Pounds, Senior Vice President of Commercial Real Estate.  (SUF ¶ 3; RSUF ¶ 3; Pl.'s SUF ¶¶ 3-5; Defs.' RSUF ¶¶ 3-5.)

Throughout her employment with Republic, Plaintiff worked out of the bank's headquarters at Two Liberty Place in Philadelphia, Pennsylvania, except when she was working remotely from her home in New Jersey on Fridays in 2017 and during the pandemic in 2020-21. (SUF ¶ 4, n.1; RSUF ¶ 4.)  In 2017, Plaintiff worked remotely on Fridays so she could spend more time with her young daughter in the morning when she would otherwise be commuting to work.  (SUF ¶¶ 38-39; RSUF ¶¶ 38-39; Pl.'s SUF ¶ 93; Defs.' RSUF ¶ 93.)  Plaintiff's request to do so was initially presented to Defendant Pounds, who in turn spoke with Ms. Zangrilli of Human Resources for final approval. (SUF ¶ 39.)  Both Pounds and Zangrilli were physically located in and worked out of the Philadelphia office.  (ECF No. 17-5 at 22, 24.)

---

[4] Plaintiff's Statement of Undisputed Facts provides 2017 as the year she became a Portfolio Manager and began reporting to Defendant Pounds.  Again, this appears to be a typographical error, as she admits to Defendants' Statement of Undisputed Facts that the year was 2007.

3

After 2017 Plaintiff returned to the office full-time but began working remotely again in March 2020, when the Covid-19 pandemic first became widespread. (SUF ¶ 43; RSUF ¶ 43; Pl.'s SUF ¶ 94; Defs.' RSUF ¶ 94.)  At some point in late 2020, after Plaintiff's initial request to continue working remotely was approved, Defendant Bank implemented the "Flexible Workplace Policy" — a more formal process for employees to make requests to work remotely, and to provide guidance to managers in granting or denying such requests.  (SUF ¶ 46; RSUF ¶ 46; Defs.' RSUF ¶ 148.)  Under the Flexible Workplace Policy, employees seeking a Flexible Workplace arrangement (such as working remotely) were required to obtain approval for the arrangement from their Department Manager, Division Manager, and Human Resources.  (SUF ¶ 47; RSUF ¶ 47; Pl.'s SUF ¶ 279; Defs.' RSUF ¶ 279.)

The Policy makes clear:

> Childcare issues are not considered to be qualifying reasons. The PTO policy is in place to address short-term needs. Longer term needs should be handled in a manner that is conducive to the employee's work expectations. Employees working from home are expected to have appropriate childcare provisions in place and should not be the primary caretaker while working from home.

(SUF ¶ 48; RSUF ¶ 48.)

By December 2020, all the other employees in Defendant's Commercial Real Estate Department in Philadelphia (Plaintiff's

4

unit) had physically returned to the office; Plaintiff was the only employee from that unit working remotely. (SUF ¶¶ 43, 45; RSUF ¶¶ 43, 45; Defs.' RSUF ¶ 143; ECF No. 17-5 at 74-75.)

On December 30, 2020, Plaintiff engaged in an email exchange with Lesley Fedor of Human Resources, in which Plaintiff informed Ms. Fedor that she would continue to work remotely, as her supervisor, Defendant Pounds, had given her permission to do so until the school year ended in June 2021. This arrangement had been approved by Ms. Zangrilli.  (SUF ¶ 44; ECF No. 17-5 at 74, 76-77; ECF No. 21-18 at 540-41.)  Ms. Fedor requested that Plaintiff complete the bank's Flexible Workplace Request Form.  (SUF ¶¶ 46-47; RSUF ¶¶ 46-47; Pl.'s SUF ¶ 294; Defs.' RSUF ¶ 294; ECF No. 17-5 at 83; ECF No. 21-18 at 540-41.)

In late April 2021, Defendant Pounds asked Plaintiff to provide him with a proposed schedule of the days she would be coming into the office each week upon her expected return in June. (SUF ¶ 49; RSUF ¶ 49.)  On May 4, 2021, Plaintiff emailed Defendant Pounds the following:

> Hi Bill. I have discussed this with Jesse and we ran it by his mother. It's impossible to say yes, I can come in every Wednesday or two days a week because his grandmother requires daily care. I'm really not sure I can answer this with Jesse's changing schedule due to COVID and his requirements to be deployed and work different areas. This is why a remote position would be ideal. I truly appreciate you trying to be flexible with me. I know the bank has to do what they feel is best.

5

(SUF ¶ 50; RSUF ¶ 50; Pl.'s SUF ¶ 299; Defs.' RSUF ¶ 299.)

Defendant Pounds responded by advising Plaintiff that he would discuss her request with his supervisor, Steve McWilliams. (SUF ¶ 51; RSUF ¶ 51; Pl.'s SUF ¶ 300; Defs.' RSUF ¶ 300.) McWilliams ultimately denied Plaintiff's request to continue working remotely through the summer. (SUF ¶ 52; RSUF ¶ 52; Pl.'s SUF ¶ 145; Defs.' RSUF ¶ 145.)  At some point between May 4, 2021 and May 13, 2021, Defendant Pounds called Plaintiff and advised her that she would not be able to continue working remotely past June 15, 2021 — the date previously agreed upon for her return to the office.  (SUF ¶ 53; RSUF ¶ 53.)

On May 14, 2021, Defendant Pounds sent Plaintiff an email asking her to call him, because there was a "potential other opportunity within the bank" for her to pursue.  (SUF ¶ 55; RSUF ¶ 55.)  While Plaintiff never called Defendant Pounds to discuss the other opportunity within the bank, Zangrilli advised her that the bank was hiring for a Mortgage Underwriter position, which would be remote. (SUF ¶ 56; RSUF ¶ 56; Pl.'s SUF ¶ 284; Defs.' RSUF ¶ 284.)  Zangrilli also asked Plaintiff if she would be willing to explore a "hybrid approach," or if her "current role could sit out of the New Jersey office for a day or two" that she is on site. (SUF ¶ 57; RSUF ¶ 57.)  Plaintiff informed Zangrilli that she was "extremely grateful" that the Bank was

willing to give her those options, but she only wished to explore the Mortgage Underwriter position, as it "would allow [her] to stay with the Bank and have the remote capability," and she felt that "at this point in [her] life a career change might be in [her] best interest." (SUF ¶ 58; RSUF ¶ 58.)

While the Mortgage Underwriter position was remote, the position required Plaintiff to initially undergo two to four weeks of onsite training at the New Jersey office. (SUF ¶ 59; RSUF ¶ 59; Pl.'s SUF ¶ 285; Defs.' RSUF ¶ 285.) Plaintiff ultimately declined the Mortgage Underwriter position because it appeared that traffic going from her daughter's summer camp in Sewell, New Jersey to the Bank's office in Marlton, New Jersey "was even more horrendous than going into the city." (SUF ¶ 60; RSUF ¶ 60.)

On May 24, 2021, Plaintiff and Zangrilli discussed Plaintiff's situation, at which time they mutually decided Plaintiff and the bank would "go [their] separate ways," and June 16, 2021 would be Plaintiff's last day of employment. (SUF ¶ 61; RSUF ¶ 61; Pl.'s SUF ¶ 59; Defs.' RSUF ¶ 59.) In order to preserve her ability to collect unemployment compensation, Plaintiff and Zangrilli agreed to treat Plaintiff's separation from the bank as involuntary. (SUF ¶ 62; ECF No. 17-5 at 122.) Plaintiff was permitted to continue working remotely until her final day of employment. (SUF ¶ 63.)

7

In her last performance evaluation before leaving the bank (signed by Plaintiff on March 10, 2021), Plaintiff wrote "I have a good relationship with my direct manager [Defendant Pounds] and any issues or problems that may come up, I make sure to always communicate those to my manager and come up with a solution.  I also will reach out to managers of other departments to gain their advice on the best way to resolve an issue."  (ECF No. 21-24 at 14.)  Plaintiff further commented "Overall, I feel our department runs rather smoothly and we have a great team."  (ECF No. 21-24 at 16.)[5]

During the times Plaintiff worked remotely while employed by Defendant Bank, she always reported to the Philadelphia office, whether it was virtually or in person four days a week in 2017 and every other Wednesday for "pipeline" meetings in 2020-21. (SUF ¶ 4; ECF No. 17-4 at 10; Pl.'s SUF ¶ 50; Defs.' RSUF ¶ 50.)  Plaintiff's e-mail signature listed her work location as Defendant Republic's headquarters in Philadelphia. (SUF ¶ 5; RSUF ¶ 5; ECF No. 17-5 at 23-35, 38, 95; ECF No. 21-16 at 5; 21-19 at 3; 21-20 at 2; ECF No. 21-21 at 4, 6-7, 9; ECF

---

[5] For purposes of the instant litigation, Plaintiff writes in her Statement of Facts: "Since Pounds was her direct supervisor, it was very difficult for her to work that way as she would have to go to him for whatever issues the team had, and it would be very obvious that he did not want to speak with her." (Pl.'s SUF ¶ 32.)  The written evaluation speaks for itself.  (ECF No. 21-24 at 10-17.)

8

No. 21-22 at 2, 4; ECF No. 21-23 at 3.)  Throughout her employment with Defendants, Plaintiff's W-2 forms showed her employer's address to be in Philadelphia, Pennsylvania. (ECF No. 17-5 at 25-49).

After her employment with Defendants ended, unemployment benefits correspondence listed Plaintiff's former employer's (Defendant Republic's) address as 50 S. 16th Street in Philadelphia, Pennsylvania. (ECF No. 17-5 at 51.)  Also after her employment ended with Defendants, Plaintiff updated her resume to indicate an end-date of June 2021.  (ECF No. 17-5 at 53-54.)  The resume lists the various positions Plaintiff held with the bank between November 2005 and June 2021, and provides her workplace location as "Philadelphia, PA" for each.  (ECF No. 17-5 at 53-54.)  Plaintiff's resume does not indicate that she ever worked for any company in New Jersey.  (ECF No. 17-5 at 53-54.)

## DISCUSSION

### I.   Subject Matter Jurisdiction

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of New Jersey, Defendants Republic Bank and William Pounds are citizens of the Commonwealth of Pennsylvania, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

## II. Standard of Review

### A. Motion for Summary Judgment

Summary judgment is appropriate when the court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. Importantly,

> In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment

10

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see also Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F.

11

App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

### III. Analysis

Plaintiff's entire Complaint is based upon the New Jersey Law Against Discrimination. "The LAD is one of New Jersey's leading legislative pronouncements that sets forth 'the familiar proposition that the clear public policy of this State is to eradicate invidious discrimination from the workplace.'" Carmona v. Resorts Int'l Hotel, Inc., 915 A.2d 518, 528 (N.J. 2007) (quoting Craig v. Suburban Cablevision, Inc., 660 A.2d 505, 508 (N.J. 1995)). Nevertheless, "LAD acknowledges the rights of employers to manage their businesses as they see fit." Viscik v. Fowler Equipment Co., 800 A.2d 826, 833 (N.J. 2002). To that end, "the LAD is not intended to be a general civility code for conduct in the workplace." Davis v. World Ins. Assocs., LLC, Civil Action No. 22-6392, 2023 U.S. Dist. LEXIS 52620, at *6-7 (D.N.J. March 28, 2023) (cleaned up).

As a preliminary — and also dispositive — matter,[6] Defendants seek judgment on Plaintiff's claims on the basis that she may not avail herself of the NJLAD because she was employed solely by Defendants' Philadelphia, Pennsylvania office. (ECF No. 17-2 at 10.) Plaintiff opposes this claim, asserting that since: she worked remotely from her New Jersey home the last sixteen (16) months of her employment with Defendants; Defendants conducted business in New Jersey; and Plaintiff collected unemployment benefits from the State of New Jersey,

---

[6] In light of this disposition, the Court need not address Defendants' other arguments for summary judgment which dispute Plaintiff's NJLAD claims on the merits. The Court does note Plaintiff's claims that Defendant Pounds denied her an "accommodation" by rejecting her 2021 request (made while she was working remotely from her New Jersey home) to work 100% remote throughout the end of Summer 2021 so she could be available for her daughter. However, this type of denial, if Plaintiff could be said to have a claim under NJLAD, does not constitute discrimination under that statute. See Fitzgerald v. Glenn Ins., Inc., Civil Action No. 1:20-CV-14891, 2023 U.S. Dist. LEXIS 57018, at *31 n.11 (D.N.J. March 31, 2023) ("A failure-to-accommodate claim under the LAD requires plaintiff to demonstrate: (1) plaintiff is an individual with a disability; (2) plaintiff is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) that defendant failed to reasonably accommodate plaintiff's disabilities.") (citations omitted). See also Dicino v. Aetna U.S. Healthcare, Civil No. 01-3206, 2003 U.S. Dist. LEXIS 26487, at *48 (D.N.J. June 23, 2003) (entering summary judgment against a plaintiff on her NJLAD claim where she sought remote work or a work location that was within 30 minutes of her home because of pain caused by pancreatitis while commuting, finding "defendant was not obligated to provide plaintiff with this accommodation . . . this request goes directly to plaintiff's ability to get to and from her work location, having nothing to do with her ability to perform her job duties once she got where she needed to be."). The same is true here.

13

she may pursue her claims under the NJLAD. (ECF No. 21 at 9.)

"The 'restriction on the extraterritorial application of the NJLAD is rooted in the well-settled understanding that New Jersey law regulates conduct in New Jersey, not outside the state.'" Peikin v. Kimmel & Silverman, P.C., 576 F.Supp.2d 654, 657-658 (D.N.J. Aug. 21, 2008) (quoting Buccilli v. Timby, Brown & Timby, 660 A.2d 1261, 1263 (N.J. App. Div. 1995)).  As such, the NJLAD is only applicable to situations in which the work location is in New Jersey.  See Peikin, 576 F.Supp.2d. at 657 ("New Jersey courts have consistently applied the law of the state of employment to claims of workplace discrimination, and therefore only apply the NJLAD if the claimant was employed in New Jersey.") (internal quotation marks omitted) (emphasis in original); see also Walters v. Safelite Fulfillment, Inc., Civil No. 18-11111, 2019 U.S. Dist. LEXIS 52355, at *6 (D.N.J. March 28, 2019) (same); Mann v. Prince Telecom, LLC, Civil No. 1:12-06263, 2013 U.S. Dist. LEXIS 104699, at *6-7 (D.N.J. July 26, 2013) (same).  To that end, "under New Jersey law, a plaintiff's New Jersey residence alone is not sufficient to trigger application of the NJLAD." Bowers v. NCAA, 151 F. Supp. 2d 526, 531 (D.N.J. 2001); see also Mann, 2013 U.S. Dist. LEXIS 104699, at *9 ("[A] plaintiff's state of residency does not determine whether that plaintiff may assert claims under the NJLAD.").

"The New Jersey Supreme Court has explained that a proper consideration to determine the applicability of the NJLAD is whether the alleged discriminatory behavior 'was expected or intended to cause injury in New Jersey.'" Id. at 532 (quoting Blakey v. Continental Airlines, Inc., 751 A.2d 538, 555 (2000)). All of the allegedly discriminatory behavior against Plaintiff occurred while she and Defendant Pounds were physically working from Defendant Bank's Philadelphia headquarters. (ECF No. 17-5 at 24, 36-37, 94; ECF No. 21-2 at 28, ECF No. 21-14 at 3-4; 21-21 at 2-4, 6, 8, 10; ECF No. 21-22 at 43; ECF No. 21-23 at 2; ECF No. 21-30 at 2-3.)  When viewed in conjunction with the entire record before this Court, the fact that Plaintiff conducted a relatively small percentage of her sixteen-year-plus term of employment from her residence in New Jersey (Pl.'s SUF ¶¶ 93-94) does not trigger the protections of the NJLAD. Plaintiff, as well as her co-workers and supervisors in the unit, were employed by, and for all intents and purposes, worked "out of" the Philadelphia office.  To "mak[e] the rights of each of several co-workers dependent on his or her state of residence would be an entirely unreasonable result." Buccilli v. Timby, Brown & Timby, 660 A.2d 1261, 1264 (N.J. Super. 1995) (citation omitted).

Plaintiff began her employment at Defendant Bank's headquarters in Philadelphia, Pennsylvania.  As such, her

15

position was based in Pennsylvania.  See Mann, 2013 U.S. Dist. LEXIS 104699, at *7 ("In light of the allegation that [Defendant] is a New Jersey company, [] the Court will assume for purposes of this motion that the position for which Mann applied or attempted to apply was based in New Jersey."). Although Defendant Bank has branches in New Jersey, Plaintiff never worked at any of them or for anyone located in New Jersey. In fact, the record clearly demonstrates that Plaintiff was resolute about not having to physically work — or even receive training — at any of Defendant Bank's locations in New Jersey. (SUF ¶¶ 57-60; RSUF ¶¶ 57-60; Pl.'s SUF ¶¶ 58-59; Defs.' RSUF ¶¶ 58-59.)

To the extent Plaintiff relies upon Calabotta v. Phibro Animal Health Corporation, 213 A.3d 210 (N.J. App. Div. 2019) to distinguish her case from those cited by Defendants on this issue, Calabotta is inapposite.  The issue before the court in Calabotta was whether the NJLAD covered a non-resident plaintiff who was employed by a subsidiary of a New Jersey corporation. The focus of the court's analysis in Calabotta was the Illinois plaintiff's relationship to New Jersey with regard to an alleged failure-to-promote to a different position in New Jersey, and the ultimate termination of employment that occurred in Illinois.  The court concluded the NJLAD would apply to Plaintiff's failure-to-promote claim, since "the new position

16

sought by plaintiff and other potential applicants was going to be located in [New Jersey], where the defendant company [ ] is based." Calabotta, 213 A.3d at 227-28.

Again, such is not the case here.[7]  Instead, "McWilliams [Director of Commercial and Industrial Lending and Plaintiff's Division Leader at the bank's Philadelphia Headquarters] communicated to Pounds that Kunkle's position was onsite [in Philadelphia], and that the policy of the department was to have an onsite workforce and that we want to have the people onsite in that position."  (Pl.'s SUF ¶¶ 100, 129, 279, 281; see also Pl.'s SUF ¶¶ 289 (during a May 2021 conversation about continued remote working, Defendant Pounds advised Plaintiff Kunkle that Republic Bank was "just not there."  Kunkle confirmed this in a May 13, 2021, email to Pounds).

Regarding the plaintiff's wrongful discharge claim under the NJLAD, the court in Calabotta opined:

> [B]ecause the job from which plaintiff was fired was located at the Illinois office, the company arguably would have reasonable expectations that all of its supervisors and employees at that office, including plaintiff, would be commonly governed by Illinois employment laws . . . On the other hand, if plaintiff can establish that the company's decision to fire him

---

[7] This Court further notes that in Calabotta, there were "agreements drafted by [Defendant] reciting that New Jersey law governs various other aspects of plaintiff's work relationship." Id. at 228.  Plaintiff herein cites to nothing in the record, written or otherwise, that suggests the parties agreed during the employment relationship to apply New Jersey law to that relationship.

17

> was made or centered in New Jersey, that would be a counterweight on the New Jersey side of the scale.

Id. at 229.

Therefore, even applying the reasoning of Calabotta to Plaintiff Kunkle's case, the mere fact that she pursued and was granted[8] the ability to spend what amounts to a proportionately minimal portion of her time working from her home in New Jersey, does not entitle her to the protections of the NJLAD.  As referenced above, Plaintiff accepted and commenced employment at Defendant Bank's Philadelphia headquarters in 2005.  When she was promoted in 2007, the promotion was offered and accepted through that same Philadelphia office.  For the entirety of Plaintiff's employment - more than sixteen (16) years — Plaintiff only worked with and reported to individuals in the Philadelphia office.  At no time did she ever accept employment in the bank's New Jersey office, nor did she ever work with or for anyone from the bank in New Jersey.  Up until the last three months of Plaintiff's employment when Plaintiff claimed Defendant Pounds improperly denied her request to work remotely on the basis of gender, all of the alleged incidents of misconduct by Defendant Pounds occurred in the Philadelphia office; i.e., the alleged yelling, desk-banging, silent-

---

[8] Except for mandated office closures during the beginning of the pandemic.

18

treatment, indifference towards Plaintiff's pregnancy, ogling. (Pl.'s SUF ¶¶ 10, 24, 28-29, 31-33; ECF No. 17-5 at 24, 36-37, 94; ECF No. 21-14 at 3-4; 21-21 at 2-4, 6, 8, 10; ECF No. 21-22 at 43; ECF No. 21-23 at 2; ECF No. 21-30 at 2-3.)

Again, it was Plaintiff who repeatedly sought to work from her home in order to spend time with her daughter. (Pl.'s SUF ¶¶ 43, 52; ECF No. 17-4 at 45; ECF No. 17-5 at 12, 14, 16, 25, 27.) At the time of her last request in 2021, she was the only person in her unit working 100% remote and of the 400+ employees at the bank, only one person from another division was similarly doing so. (Pl.'s SUF ¶¶ 276, 278; Defs.' RSUF ¶¶ 276, 278.)

In view of the record as presented by the parties, Plaintiff is precluded from seeking recovery under the NJLAD because she was not "employed" in New Jersey. Accordingly, Defendants' motion for summary judgment on this basis shall be granted.

## CONCLUSION

For the reasons set forth above, the court will grant Defendants' Motion for Summary Judgment.

An appropriate Order will accompany this Opinion.


Dated: 7/5/23                           /s/  Noel L. Hillman
Camden, New Jersey                                    U.S.D.J.